UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHARLES D. BROWN,

          Plaintiff,               **DECISION**

v.                                    **and ORDER**

CITY OF ROCHESTER, PAUL HOLAHAN (As       09-CV-6307
Commissioner of Environmental Services),
and NORMAN JONES (As Manager of Building
Services),

          Defendants.

_____

## INTRODUCTION

Plaintiff Charles D. Brown, ("Plaintiff" or "Brown"), brought this action *pro se* pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and 42 U.S.C. § 1983[1] against his former employer, the City of Rochester, ("the City") and two individual defendants, Paul Holahan ("Holahan") and Norman Jones ("Jones") in their official capacities (collectively "Defendants"), initially claiming that he was discriminated against on the basis of his race, retaliated against for complaining of discrimination, treated differently than other employees in the

_____

[1]Plaintiff's Complaint alleges violations of his federal civil rights and he states that the nature of the suit is "a civil rights claim, 442 Employment." While Plaintiff does not cite to a particular constitutional provision or federal statute, this Court has broadly interpreted the Complaint to assert causes of action for employment discrimination and retaliation under Title VII and for violations of due process and equal protection. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006).

disciplinary process, and denied due process prior to his demotion and termination.

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). Plaintiff opposes Defendants' motion, and he now specifically contends that because of his "lack of understanding of civil law," this lawsuit was misconstrued by the Defendants and the Court as a racial discrimination in employment case. See Pl. Resp. at ¶70-71 (Docket No. 32). He further states "This case is clearly not about race. This is a case of blatant misuse of power by the defendants." See id. at ¶70. He later states that he was denied due process, he suffered retaliation and he was wrongfully demoted and terminated. Id. at ¶73-4.

Plaintiff appears to have abandoned any claim he may have based on racial discrimination; and, as set forth below, he has neither alleged nor presented any evidence that any of the actions taken by the Defendants occurred under circumstances giving rise to an inference of discrimination based on his race or his membership in any other protected class. Accordingly, his employment discrimination claims must be dismissed. Finally, as Plaintiff has not presented evidence from which a reasonable jury could conclude that he was denied due process prior to his demotion or termination, his due process claims must also be dismissed.

Therefore, Defendants' Motion for Summary Judgment is hereby granted in its entirety. Plaintiff's Complaint is dismissed with prejudice.

## BACKGROUND

Local Rule of Civil Procedure 56 (a) requires that a party moving for summary judgment include with its motion a "separate, short, and concise statement...of the material facts as to which the moving party contends there is no genuine issue to be tried." See Local Rule 56(a).  "When a party has moved for summary judgment [] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992).  Pursuant to Local Rule 56 (a)(2), the opposing party must submit a separate statement which "shall include a response to each number paragraph in the moving party's statement...and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried."

Plaintiff submitted a "Response" to Defendants' motion, which is entitled "Plaintiff's Material Facts Not in Dispute Pursuant to

Rule 56."[2]  However, Plaintiff's submission does not specifically controvert Defendants' assertions, nor does it apprise the Court of any material issues of facts for trial.  Rather, in seventy-six numbered paragraphs, after stating the he was "duly sworn," Plaintiff describes his employment history with the Defendants and the events that ultimately led to his demotion and termination.  He also discusses his personal beliefs regarding the employment actions taken against him and describes events of which it does not appear that he has any personal knowledge and events which are not relevant to his claim.

In light of Plaintiff's failure to properly controvert Defendant's Statement of Material Facts, this Court will deem those factual assertions admitted to the extent they are supported by the record. See Local Rule 56 (a)(2) (statements of undisputed fact that are not controverted by the non-moving party are deemed admitted).  However, as Plaintiff is proceeding *pro se*, the Court has considered his submission, to the extent it asserts facts of which Plaintiff has personal knowledge and which are relevant to this claims.  Accordingly, the following facts are taken from the record, including Defendants' Local Rule 56 Statement and

---

[2]The Court notes that Plaintiff was provided a Notice to *Pro Se* Litigants, apprising him of the manner in which he must oppose Defendants' Motion for Summary Judgement. (Docket No. 34).  Plaintiff was also advised by this Court to contact the *Pro Se* Department of the Western District of New York if he had any questions. (Docket No. 33).

accompanying exhibits (Docket No. 34) and Plaintiff's Response (Docket No. 32).

Plaintiff Charles Brown is an African-American who began working for the City in 1999 in the Building Services Division (a division of the City's Department of Environmental Services ("DES")). He was promoted to the position of Maintenance Mechanic, also within the Building Services Division, a position which he held until approximately July 2008. For the majority of his tenure as a Maintenance Mechanic, Brown was a member of the "Board-up Crew," which is a group that works with City law enforcement and neighborhood centers to secure (i.e., "board up") properties around the City that have been rendered vacant following drug raids and emergency evacuations.

The record reveals that Plaintiff had a checkered employment history with the City. His disciplinary record details approximately 28 disciplinary infractions from 2000 through 2006, including poor work performance, unauthorized absences and insubordination. Plaintiff admits to some of these violations, but he argues that several were unwarranted or unsupported by evidence.

In 2006, the City terminated Plaintiff's employment following his arrest for illegal drug and gun possession. However, Plaintiff successfully utilized the City's internal grievance process, and was later reinstated to his job as a Maintenance Mechanic in the Building Services Division. That process took approximately 15

months, at the conclusion of which Plaintiff was awarded back pay, benefits and returned to his prior position and pay grade.  He then returned to working with the Board-up Crew. Plaintiff states that other employees and Defendant Jones treated him differently after he returned.

Plaintiff was transferred to the "Carpentry Crew" within the Building Services Division after complaining of safety concerns with the truck used by the Board-Up Crew, in May 2008.  The record also indicates that the City determined a transfer was warranted to address various problems between Brown and his co-workers. Plaintiff's duties (other than utilizing the truck) were essentially the same with the Carpentry Crew and he remained at the same pay grade and in the same building.

In May 2008, one of Plaintiff's previous colleagues from the Board-up Crew, Erick Soto ("Soto"), filed a written complaint against Plaintiff with DES management and defendant Jones, claiming that Plaintiff threatened Soto with physical violence and bodily harm.[3]  Plaintiff contends that Soto intentionally fabricated his complaint and that other persons were responsible for the threats.

In connection with Soto's allegations against Brown, Jones decided that Brown should no longer be permitted in a locker room/storage area used by the Board-Up Crew known as the "Board-Up

---

[3]Soto also pressed criminal charges and sought an Order of Protection against Brown in Rochester City Court.  Those charges were apparently dismissed by Hon. Theresa Johnson.

Room," because, as a member of the Carpentry Crew, there was no need for Brown to access or utilize this room. Jones instructed Brown's supervisor, Vern Dillon ("Dillon"), to notify Brown that he was no longer permitted in the Board-Up Room. Dillon claims Brown then became "riled up" and "very disgruntled."

Brown approached Jones in his office and Jones states that Plaintiff would not accept his explanation - namely, that there were concerns about Brown's behavior in the Board-Up Room - and Brown began yelling, cursing and threatening Jones. Jones instructed Brown to leave his office and return to his work assignment. When Brown finally left Jones' office, he did not return to his work assignment, but went into the Board-Up Room and began "venting" to other colleagues. Jones observed Brown in the Board-Up Room yelling, swearing and crying for approximately 45 minutes through the use of surveillance cameras. Jones then decided to approach Brown to encourage him to calm down and return to work. However, Brown became aggravated and yelled something to the effect of, "somebody needs to get this fucking guy." Jones called security who attempted to facilitate a further unsuccessful discussion between Brown and Jones. Brown was eventually escorted off the premises.

In connection with the foregoing events and Soto's formal written complaint, the City suspended Brown with pay pending an investigation into Soto's allegations. At this time, Plaintiff

complained to management and Defendant Holahan that he was not responsible for the threats and he was being retaliated against for complaining to Jones about the unsafe conditions of the truck.  He further reported that Jones, also an African American, made certain comments about other white employees, calling them "crackers."

A hearing was held by Holahan in early June 2008, during which Plaintiff was afforded an opportunity to give testimony about the incidents with Soto and Jones.  A union representative was present on Brown's behalf.  Plaintiff claimed the interaction with Jones escalated because Jones was disrespectful and he stated that he was not attempting to threatening Jones.  Plaintiff claims, however, that the City did not consider his explanation or the evidence he presented that he had not threatened Soto and that Soto had fabricated his complaint.

Following the City's investigation, it determined that Brown's behavior (*i.e.* failing to follow directives and becoming erratic) warranted disciplinary action and it demoted him to the position of Ground Equipment Operator ("GEO"), within the Parks Department, still a division of DES.  Brown's new supervisor was Lauren Nelson ("Nelson"). The demotion reduced his salary by $2.00 per hour. Plaintiff sought relief through the City's internal grievance process, but his demotion was upheld by an independent arbitrator.

Approximately four months after his demotion in July 2008, Plaintiff was accused of sexually harassing one of his female co-

workers.  Plaintiff claims that this complaint was also fabricated.
Following receipt of the young woman's complaint, Brown was
instructed by Nelson not to contact the young woman or any other
City employees regarding this investigation.   However, the City
states that Brown attempted to approach the young woman about her
allegations. Brown claims that he did not approach the woman, but
that she was present while he was discussing the complaint with
another coworker and he was not aware that she was present.

Because Brown had twice been accused of harassing his co-
workers within a span of four months, Holahan suspended him without
pay while the City investigated the young woman's complaints. After
an investigation into the sexual harassment charge and a hearing,
the City decided to terminate Brown, based on his employment
history consisting of repeated incidents of insubordination and the
multiple complaints from co-workers regarding his behavior.  He
again utilized the City's internal grievance process, but an
independent arbitrator ultimately determined that the City's
progressive discipline of Brown (demotion then termination) was
warranted.

Plaintiff denies any wrongdoing in connection with both
incidents.  He also states that the City failed to consider certain
evidence that proved that he did not threaten or harass Soto or the
female co-worker.

Plaintiff filed complaints with respect to his demotion and his termination with the New York State of Division of Human Rights ("SDOH").  The Equal Employment Opportunity Commission ("EEOC") adopted the SDOH findings and issued a "Right to Sue" letter on April 6, 2009.  Plaintiff timely commenced this action, *pro se* on June 15, 2009.

DISCUSSION

## I.   Standard of Review of a Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 380 (2007).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.1998), but must affirmatively "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e). To discharge this burden, "a plaintiff must come forward with evidence to allow a reasonable

jury to find in his favor" on each of the elements of his prima

facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d

Cir.2001); see also D'Amico v. City of New York, 132 F.3d 145, 149

(2d Cir.1998) ("non-moving party may not rely on mere conclusory

allegations nor speculation, but instead must offer some hard

evidence showing that its version of...events is not wholly

fanciful.")). "[P]roceeding *pro se* does not otherwise relieve a

litigant from the usual requirements of summary judgment." See

Viscusi v. Proctor & Gamble, 2007 WL 2071546, at * 9

(E.D.N.Y.2007).

## II.   Plaintiff's Discrimination and Retaliation Claims

In employment discrimination cases, the Court reviews a motion

for summary judgment pursuant to the familiar burden-shifting

framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S.

792 (1973).[4] Under this framework, the plaintiff must first

establish a prima facie case of discrimination.  To establish a

prima facie case of racial discrimination under Title VII, a

plaintiff must show that he is a member of a protected class, was

qualified for the position he held, was discharged, and that the

---

[4]The Court has interpreted Plaintiff's Complaint to raise claims of employment
discrimination and retaliation in violation of Title VII, and, as set forth below, a claim for a
violation of his Equal Protection rights pursuant to 42 U.S.C. § 1983.  To the extent Plaintiff also
seeks to bring a claim of racial discrimination pursuant to 42 U.S.C. § 1981, the Court notes that
such claims are also analyzed under the McDonnell Douglass, framework. See Gertskis v. NYC
D.O.H.M.H., 375 Fed. Appx. 138, 2010 WL 1731825 (2d Cir. 2010) ("The burden-shifting
framework articulated in McDonnell Douglas also applies to employment discrimination claims
brought under §§ 1981 and 1983.").

discharge occurred under circumstances giving rise to an inference of discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).   A prima facie case of retaliation requires the plaintiff to establish that: (1) he participated in a protected activity known to the defendant; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)(citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)).   Any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination" could constitute retaliation.  Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 67-68 (2006).

Thereafter, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, which, if proffered, places the burden on the plaintiff to prove that discrimination was the real reason for the employment action. See Wolf v. New York City Dept. of Educ., 421 Fed. Appx. 8, 10, 2011 WL 1571890 (2d Cir. 2011).  Although the Second Circuit Court of Appeals has stated that "the burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the *prima facie* stage is *de minimis*," Tomka v. Seiler Corp., 66 F.3d at 1308 (internal citations omitted), it has also noted that "[a] jury cannot infer discrimination from thin air."

Norton v. Sams Club, 145 F.3d 114 (2d Cir.), cert. denied 119 S.Ct. 511 (1998).

Even assuming that Plaintiff has established a *prima facie* case of retaliatory discrimination and that he has presented evidence to satisfy the following elements of an employment discrimination claim:  membership in a protected class, qualification for his position and termination;  Plaintiff has not presented evidence from which a reasonable jury could conclude that the employment actions taken occurred under circumstances giving rise to an inference of discrimination on the basis of any constitutionally protected class.

Plaintiff initially alleged in his Complaint that he was discriminated against on the basis of his race. However, Plaintiff now contends that racial discrimination does not form the basis of his claim.  He states that the Defendants and the Court have misinterpreted his claims to be based on race, but that the real basis of his claims is that the Defendants' abused their power and wrongfully terminated his employment. See Pl. Resp. at ¶70-71.  A review of the record also clearly indicates that there is no evidence of racial discrimination from which a reasonable jury could conclude that Plaintiff's demotion or termination occurred under racially discriminatory circumstances.[5]  Accordingly, both

---

[5]The only evidence in the record of any racist activity is Plaintiff's allegation that Jones, also an African American, made a comment to him in which he referred to other white employees as "crackers."  However, the comment was not about Plaintiff or his race and there is

his claim for racial discrimination in employment and discriminatory retaliation must be dismissed, as there is no evidence that any actions taken by the Defendant were the result of racial discrimination.  Additionally, Plaintiff does not allege nor is there any evidence in the record of discrimination based on any other characteristic protected by Title VII,[6] the Constitution, or any other federal statute or law (for example, age, religion, sex, or disability).

Further, the defendants have asserted that any adverse action taken against the plaintiff resulted from the plaintiff's poor performance and his disciplinary history, including the several complaints that were brought against him just prior to his demotion and termination.  Plaintiff has failed to rebut Defendant's proffered explanation for terminating his employment by presenting evidence that the proffered reason is a pretext for actual discrimination.  To rebut the defendants' stated reason for discharging him the plaintiff must submit evidence upon which a rational trier of fact could determine that discrimination "was more likely than not . . . the real reason" for plaintiff's

---

no evidence that it was anything more than a single isolated occurrence, which is insufficient to support a claim for racial discrimination.

[6]Title VII prohibits an employer from ". . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. § 2000e-2.

discharge." Woroski v. Nashua Corp., 31 F.3d 105, 110 (2nd Cir. 1994). There is simply no evidence in the record that the real reason that Plaintiff was discharged was unlawful discrimination.

Plaintiff also appears to allege that he was treated differently than other employees in the disciplinary process, which this Court interprets as a claim for a violation of the Equal Protection clause pursuant to 42 U.S.C. § 1983. But, as discussed above, he has neither alleged nor presented any evidence of disparate treatment based on a his membership in a constitutionally protected class and the Supreme Court has rejected the "class-of-one" theory of equal protection claims in the public employment context. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). Accordingly, to the extent Plaintiff brings a such a claim, it is hereby dismissed with prejudice.

### III. Plaintiff's Due Process Claims

What is left of Plaintiff's Complaint then is his claim that he was demoted and terminated without due process of law, which he now contends is the actual crux of his case. He states that his case is not about race, but it is "a case of blatant misuse of power by the defendants." He further states "Defendants clearly have violated my due process rights to prove my innocence in the alleged acts of insubordination, sexual harassment and threats to employees by not allowing key witnesses and evidence to prove the

truth. But Defendants allow any information to prove guilt." Pl. Resp. at ¶70-73.

It is well settled that a due process violation has not occurred where there exists an adequate post-deprivation procedure to remedy a random, arbitrary deprivation of liberty or property. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527 (1981);  Ridgeview Partners, LLC, v.  Entwistle, 354 F.Supp.2d 395 (S.D.N.Y. 2005).  In this case, prior to both his demotion and his termination, the claims against Plaintiff were investigated and Plaintiff was given notice and granted a hearing and an opportunity to be heard.  Plaintiff contends that he was not allowed to present particular pieces of exculpatory evidence to the City at his hearing or that the City failed to consider such evidence. However, in both cases, Plaintiff utilized the City's grievance procedures to challenge the alleged wrongful actions and both his demotion and his termination were later upheld by an independent arbitrator.  Further, because Plaintiff could have sought additional relief through an Article 78 Proceeding, he cannot sustain a claim for a violation of due process. See Hellenic American Neighborhood Action Committee v. City of New York, 101 F.3d 877 (2d Cir. 1996)(finding that the failure to bring an Article 78 proceeding where it is available does not amount to a violation of due process)(citing Giglio v. Dunn, 732 F.2d 1133 (2d Cir. 1984)).

This Court finds that Plaintiff has not presented sufficient evidence from which a reasonable jury could find that he was denied due process prior to his demotion or his termination. Therefore, his claim for a violation of due process is hereby dismissed with prejudice.

<u>CONCLUSION</u>

For the reasons set forth herein, Defendants' Motion for Summary Judgement is granted in its entirety. Plaintiff's Complaint is hereby dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED**.

S/ Michael A. Telesca

_____
Michael A. Telesca
United States District Judge

DATED:   Rochester, New York
         September 16, 2011